[No. 1830, July 28, 1915.]
# STATE HIGHWAY COMMISSION v. SARGENT,
## State Auditor.

### SYLLABUS BY THE COURT.

1. Section 8 of chapter 42, Laws of 1909, providing for the creation of a "road fund," and making such funds subject to the orders of the Road Commission, and section 2 of chapter 54, Laws of 1912, providing that the State Highway Commission, as the successor of the Territorial Roads Commission, shall have charge of all matters pertaining to the expenditure of the said road fund, in the construction, improvement, and maintenance of public roads and bridges in the state, and giving said Highway Commission the right to do all things necessary and expedient in the exercise of such supervision of the road fund, empower said Highway Commission to order all of the said fund or any part thereof to be drawn from the state treasury by proper warrant of the State Auditor, to be disposed of as directed by the State Highway Commission.

Petition for mandamus by the State Highway Commission against Wm. G. Sargent, State Auditor. Writ granted.

FRANK W. CLANCY, Attorney General, for petitioner.

REED HOLLOMAN of Santa Fe, for respondent.

### OPINION OF THE COURT.

HANNA, J.—This is a petition for a writ of mandamus directed to the State Auditor, Hon. Wm. G. Sargent, directing him to draw a warrant in the sum of $17,798.62, against the state road fund, being the whole of said fund. The State Auditor has refused to draw said warrant on said fund upon the ground that the petitioner has no lawful right to draw all of the money to the credit of said fund, and to permit the drawing of said fund in the manner sought to be availed of would be contrary to

public policy, and that therefore he should not be compelled to draw the warrant demanded.　The State Auditor further contends that the State Highway Commission has no authority to pay out moneys in any way other than by vouchers presented to the. auditor, showing the express purchases or payments of wages or salaries as provided by law, upon· which vouchers the auditor draws warrants on the treasurer.

Other matters are set up by the petition herein relative to the future disbursement of the proceds of a bond sale now under negotiation, which will be deposited in said road fund at an early date if such· sale be consummated; but we are unable to consider these matters, as they are not at present properly before the court for consideration, although the conclusion arrived at in this case as to· the authority in the State Highway Commission as to the control of said road fund may be decisive of the future right of said commission to draw against said fund until the Legislature shall make other and different provisions for the control of said fund.

No authority is cited to us upon the question presented, and by reason of the fact that the question resolves itself into one purely of construction of local statutes, somewhat novel in their nature, it is not to be expected that. authority in point could be found which might prove of value as a guide to the solution of the question.

The question presented is essentially whether or not the State· Highway Commission has an absolute right of control over the road fund, and may direct the withdrawal of said fund from the state treasury prior to an accounting therefor, such as is usually required by voucher and itemized showing of expenditure.　It is contended that no such control in the Highway Commission exists, and that it has no· authority to pay out moneys other than by drawing voucher showing the express purchase or payments as provided by law.　This contention is based upon the original act creating the office of State· Engineer.　Chapter 49, Laws of 1907.　By section 7 of said act last· referred to,

as the same appears in the Code of 1915, § 5660, it is provided:

> "All claims for services rendered, expenses incurred, or materials or supplies furnished under the direction of the State Engineer and which are payable from the funds appropriated for the prosecution of the work under his direction and supervision, shall be approved by the State Engineer and properly vouchered and filed in the office of the State Auditor, who shall, if he finds the same to have been incurred in accordance with the law, audit and allow such claims and issue his warrant on the treasurer in payment thereof."

This provision standing alone would be conclusive in the matter, and clearly show an intention on the part of the Legislature to require an accounting by the State Engineer and his subordinates for all disbursements in the same manner as such accounting is required from other state officers. In fact, by section 5 of the same legislative act it was provided that:

> "The salaries and expense of the office of the Territorial Engineer shall be paid at the same time and in the same manner as those of other officers of the territory."

It is to be borne in mind, however, that this act provided for the creation of the office of Territorial Engineer and Board of Water Commissioners, and to provide for the conservation and regulation of the use and distribution of water in New Mexico.

An administrative office, that of Territorial Engineer, for the purpose indicated was created, and ample provision made therefor; but nowhere does it appear in said act that the administration of public roads or highways was then contemplated.

A previous act relating to public highways (chapter 124, Laws 1905) has been passed by the Legislature of New Mexico, comprehensive in its scope, and repealing prior acts in conflict therewith. By this act the main-

tenance and repair of all public highways was left to the respective counties in which the same were located, and the board of county commissioners was directed to create suitable road districts, and appoint a road overseer for each district. In the year 1909, the Legislature, by chapter 42 of the laws of that session, created a Territorial Roads Commission, to be composed of three members, which commission was given general charge and supervision of all highways and bridges in the territory which were then constructed and maintained in whole or in part by the aid of territorial money; it being further made the duty of such commission to construct, repair, and maintain at the expense of the territory, in whole or in part, such public roads and highways within the territory as in their judgment would best subserve the interests of the general public. To provide for the expenses of carrying out the provisions of that act, the commission was authorized and empowered to cause to be levied annually a tax of not to exceed one mill upon the dollar of taxable property in the territory, to constitute what should be known as the road fund, "which fund shall be subject to the orders of the road commission." See section 2642, Code 1915. This act of 1909 was largely amended by chapter 54, Laws of 1912; it being first provided by the latter act that the commission should be known as the State Highway Commission, and that, in addition to the powers and duties prescribed by the act of 1909, the commission "shall have charge of all matters pertaining to the expenditure of the state road fund in the construction, improvement and maintenance of public roads and bridges in the state and shall do all things necessary and expedient in the exercise of such supervision." Section 2, c. 54, Laws 1912; section 2632, Code 1915. The commission was given larger powers in connection with public highways than had theretofore been granted to the Territorial Commission, and the act of 1912 further provided for the creation of county road boards with certain jurisdiction over county roads; such county road boards, however, being directed, in laying out the county system, to co-operate with, and

State Highway Comm'rs. v. Sargent, Auditor, 20 N. M. 577.

be advised by, the State Highway Commission. So it would appear that the State Highway Commission was in effect created the highest authority as to public highways in the state; the county road boards being in fact required to make annual report to the Highway Commission, and such other reports as might be called for by such commission. The commission was given authority to employ, remove, and fix salaries of engineers, experts, clerks, stenographers, and temporary employés, as might be necessary to carry on this work. And in this connection it is a matter of common knowledge, which is borne out by the records of the State Highway Commission, that numerous road camps have been established in different parts of the state, and that a large number of employés have been engaged under the direction of the Highway Commission in the construction of highways and bridges. These road camps and employés have entailed the expenditure of large sums of money for supplies and materials which have been purchased from time to time as needed, and at points nearest the place where the supplies and materials were required. The character of this state work has been such as to require the prompt payment for such materials and supplies, and it is apparent that the business could not be conducted in the usual manner required for state business. In other words, it would not be feasible to require that all the items of expenditure made necessary by the construction of the public roads and bridges should be itemized and vouchered and paid through the State Auditor by a warrant drawn upon the State Treasurer as is ordinarily done in the expenditure of other state funds. The necessities of the public work in question would seem to require a different method for the disbursement of the so-called road fund, and we must assume that the Legislature understood the conditions referred to, and intended to give to the State Highway Commission a larger authority in the matter of the disbursement of the fund in question than has been given to other state officials or institutions with respect to the disbursement of funds placed in their charge.

As pointed out by the petition filed herein, it has been customary for the petitioner to request the auditor to draw warrants payable out of the said road fund in the sum of $10,000, each of which warrants has presumably been placed to the credit of the commission, and drafts made upon such deposit for the payment of expenses as required. This has been done by reason of the necessities of the case, if not by reason of the construction of the act in question, by the officers charged with the responsibility for its administration.

We do not believe that the narrow construction contended for, and based upon the act of 1907, creating the office of Territorial Engineer, at which time it is pointed out the Legislature did not have in mind the duties which have since devolved upon the State Engineer and the Highway Commission of which he is a member, with respect to the administration of public roads and highways, should be adopted. The subsequent acts of the Legislature of 1909 and 1912 indicate clearly a legislative intent to enlarge the powers of the Territorial Commission and its successor, the State Highway Commission, in the matter of the control of the so-called "road fund." By the act of 1909, it was provided that the road fund should be subject "to the orders of the road commission." Evidently this authority was not deemed sufficient, and in 1912 the Legislature (section 2, c. 54) enlarged this power and provided that the commission "shall have charge of all matters pertaining to the expenditure of the said road fund in the construction, improvement and maintenance of public roads and bridges in the state, and shall do all things necessary and expedient in the exercise of such supervision."

Can it be said that the drawing of this fund, and the placing of it in banks throughout the state, subject to check by the Highway Commission, or its designated officers, in order that the bills created in connection with the road work in all parts of the state may be promptly met, is not a thing necessary and expedient in the exercise of the supervision over such funds? We do not think so.

And we are of the opinion that the State Highway Commission, in the exercise of its control over the said fund, and its authority to do all things necessary and expedient in its supervision of the expenditure of the said fund, may order all of said fund or any part thereof to be drawn from the state treasury by proper warrant of the State Auditor to be disposed of as directed by the State Highway Commission. While a question may be raised as to the public policy involved in permitting what might be termed a loose administration of public funds, yet it is not for us to criticise or construe the acts in question by virtue of our opinion as to such administration. If the administration of the fund in question is objectionable, it is for the Legislature to make different provision therefor, but as we construe the act of 1909, and the act of 1912 there is at the present time existing in the State Highway Commission ample authority to claim the right here sought to be invoked, and the petition of said commission that the State Auditor be directed by a writ of mandamus issuing out of this court to draw the warrant for $17,798.62 must be granted, and it is therefore ordered that the writ issue.

PARKER, J., concurs.

ROBERTS, C. J., being absent, did not participate in this decision.