The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: May 27, 2026

**No. A-1-CA-42055**

**KATHERINE SEMONES, as**
**Trustee of the Katherine M.**
**Semones Revocable Trust, dated**
**December 19, 2008; restated**
**March 19, 2013,**

     Plaintiff-Appellee,

v.

**RENEE FRANCES GARCIA,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SIERRA COUNTY**
**Mercedes C. Murphy, District Court Judge**

Carrillo Law Firm, P.C.
Raúl A. Carrillo
Las Cruces, NM

for Appellee

Martin & Lutz, P.C.
David P. Lutz
Las Cruces, NM

for Appellant

**OPINION**

**ATTREP, Judge.**

{1}     Defendant Renee Frances Garcia appeals a district court judgment granting Plaintiff Katherine Semones, as Trustee of the Katherine M. Semones Revocable Trust, an easement by necessity over Defendant's property (the Garcia Property) in favor of Plaintiff's property (the Semones Property). After a bench trial, the district court made numerous factual findings, making evident that, at the time the Semones Property was severed from the Garcia Property, the Semones Property was not landlocked and had access to a public roadway. In light of these findings, no easement by necessity was established. The fact that the Semones Property later became landlocked, subsequent to the severance, does not alter this conclusion. The district court, having reached a contrary result, erred as a matter of law. We therefore reverse and remand.

**BACKGROUND**[1]

{2}     The Semones Property, located along Monticello Canyon in Sierra County, borders the Garcia Property to the west and is comprised of approximately twelve acres of undeveloped land. Originally, both properties were part of the Manuel

---

[1]Because neither party has effectively challenged any of the district court's factual findings, they are binding on appeal. *See Rodriguez v. Sanchez*, 2023-NMCA-076, ¶ 21, 536 P.3d 543 (providing that unchallenged factual findings are binding on appeal). The background accordingly is based on the facts as found by the district court, as well as the exhibits relied on by the district court.

Sanchez Patent from the United States. The Semones Property came into existence in 1927 pursuant to a warranty deed (the 1927 Deed) that severed the Semones Property from the Garcia Property, conveying it from Jose and Emiliana Chavez to Jacobo and Irinea Chavez.

{3}     "With respect to historical access to [the Semones P]roperty," the district court found that the 1927 Deed "explicitly references a road on the boundary of [the Semones P]roperty," and that "[p]rior to the creation of Calle del Norte in the 1970s, access to both . . . properties was through Ruby Road," a county road.[2] Following a serious flood in 1967, the road system in the area changed and a new county road, Calle del Norte, was constructed in the 1970s. Calle del Norte traverses the Garcia Property, but does not provide access to the Semones Property. Pursuant to NMSA 1978, Section 67-5-4 (1905), Sierra County formally vacated Ruby Road in 2010.

{4}     Plaintiff, who has lived in the Monticello area since 2005, purchased the Semones Property in 2021. At the time of purchase, Plaintiff knew that the Semones Property was landlocked and could find no information about any easements. Such lack of access was documented in the title insurance policy Plaintiff purchased.

---

[2]The district court also found that historical access to the Semones Property was through an arroyo, Alamosa Creek, running across the property from the south. Because the district court found that the Semones Property had historical access by Ruby Road, a public road, whether access also was possible by Alamosa Creek is immaterial to our decision in this matter.

Consequently, as found by the district court, "Plaintiff took a known risk that her property would lack legal access when she purchased it."

{5}     Approximately two years after the purchase, Plaintiff filed a "Complaint for Easement by Necessity" against Defendant, asserting a single claim—that the Semones Property is entitled to an easement by necessity against the Garcia Property. At the one-day bench trial, Plaintiff offered no witnesses or exhibits relating to the historical access to the Semones Property, while Defendant offered witnesses who testified to such access. The parties submitted proposed findings of fact and conclusions of law. The district court entered its own findings and conclusions, ultimately ruling that the Semones Property "is entitled to an easement by necessity for ingress and egress against the [Garcia P]roperty." Defendant appeals.

**DISCUSSION**

{6}     "We review de novo legal questions arising from a district court's application of law to the facts involving the existence of an easement." *Los Vigiles Land Grant v. Rebar Haygood Ranch, LLC*, 2014-NMCA-017, ¶ 25, 317 P.3d 842. "If challenged on appeal, the [district] court's [factual] findings will be examined only to the extent necessary to determine whether they are supported by substantial evidence." *Crespin v. Safeco Ins. Co. of Am.*, 2018-NMCA-068, ¶ 14, 429 P.3d 968 (citing *Mayer v. Smith*, 2015-NMCA-060, ¶ 9, 350 P.3d 1191). If left unchallenged,

the district court's factual findings are the controlling facts on appeal and are binding on this Court. *See Baker v. Endeavor Servs., Inc.*, 2018-NMSC-035, ¶ 2, 428 P.3d 265. "[W]here a conclusion conflicts with, or does not follow, a finding of fact, the finding of fact controls and the appellate court will apply the proper conclusion of law." *Sachs v. Bd. of Trs. of Town of Cebolleta Land Grant*, 1976-NMSC-076, ¶ 24, 89 N.M. 712, 557 P.2d 209; *see also Komis v. Farmers Ins. Co.*, 2026-NMCA-049, ¶ 6, 587 P.3d 836 (same).

{7}     Defendant accepts the district court's factual findings and argues that these facts do not support the court's legal conclusion that the Semones Property is entitled to an easement by necessity burdening the Garcia Property. Plaintiff, for her part, mounts no effective challenge to the district court's factual findings, making them binding on appeal. Given these binding facts, we agree with Defendant that the district court incorrectly applied the law in ruling that Plaintiff was entitled to an easement by necessity. Finding Plaintiff's arguments in support of affirmance unpersuasive, we reverse.

**I.     The Facts Found by the District Court Do Not Establish an Easement by Necessity**

{8}     "Generally, the law does not favor claims of easement and the burden is on the party asserting such claim to prove it clearly." *Herrera v. Roman Cath. Church*, 1991-NMCA-089, ¶ 11, 112 N.M. 717, 819 P.2d 264 (text only) (citation omitted); *see also Los Vigiles Land Grant*, 2014-NMCA-017, ¶ 34 (examining whether the

elements of an easement by necessity were proven by clear and convincing evidence); *Ciolli v. McFarland Land & Cattle Co.*, 2017-NMCA-037, ¶ 12, 392 P.3d 635 (examining whether the facts "constitute clear and convincing evidence that an easement by necessity is proper").

{9}     "Easements may be created by express agreement, prescription or by implication." *Herrera*, 1991-NMCA-089, ¶ 10. An easement by necessity is one implied by law and "arises from an implied grant or reservation of a right of ingress and egress to a landlocked parcel." *Id.* That is, the owner of the servient parcel does not convey the easement explicitly, but, based on the circumstances, a presumption arises that the servient owner intended to convey such easement. *See id.*; *see also Hurlocker v. Medina*, 1994-NMCA-082, ¶ 20, 118 N.M. 30, 878 P.2d 348 (providing that "the implied intent of the parties, rather than [the] public policy [of productive land use], is the basic rationale underlying easements by necessity"). For this presumption to arise, such that an easement by necessity may be recognized, the proponent must prove:

> (1) unity of title, indicating that the dominant and servient estates were owned as a single unit prior to the separation of such tracts; (2) that the dominant estate has been severed from the servient tract, thereby curtailing access of the owner of the dominant estate to and from a public roadway; and (3) that a reasonable necessity existed for such right of way at the time the dominant parcel was severed from the servient tract.

*Herrera*, 1991-NMCA-089, ¶ 12 (citing, among other authorities, *Amoco Prod. Co. v. Sims*, 1981-NMSC-115, ¶¶ 12-14, 97 N.M. 324, 639 P.2d 1178); *see also Ciolli*, 2017-NMCA-037, ¶ 15 ("Easements by necessity are implied by law because conveyance of land carries with it a presumption that neither of the resulting parcels severed by a conveyance will be deprived of certain implied rights, including an implied right of access."). Proof of each element is a prerequisite to an easement by necessity being recognized. *See Herrera*, 1991-NMCA-089, ¶ 12 (stating that the proponent of an easement by necessity must establish the foregoing elements); *Ciolli*, 2017-NMCA-037, ¶ 16 (same); *Amoco Prod. Co.*, 1981-NMSC-115, ¶ 14 (concluding that where the proponent of the easement failed to prove unity of title, an easement by necessity was not established).

{10}    If the proponent meets the three-factor test, "absent a clear indication to the contrary, the grantor is presumed to have intended to . . . have conveyed . . . a means of access to the property in question, so that the land may be beneficially utilized," and an easement by necessity is established. *See Herrera*, 1991-NMCA-089, ¶ 10; *see also Hurlocker*, 1994-NMCA-082, ¶¶ 1-3, 5, 14-25 (remanding to the district court to resolve whether an easement by necessity was created where the intent of the parties was unclear, notwithstanding that the three elements of unity of title, curtailment of access by severance, and reasonable necessity at the time of severance were present); Restatement (Third) of Prop.: Servitudes § 2.15 (2000) ("A

conveyance that would otherwise deprive the land conveyed to the grantee, or land retained by the grantor, of rights necessary to reasonable enjoyment of the land [(including ingress and egress)] implies the creation of a servitude granting or reserving such rights, *unless* the language or circumstances of the conveyance clearly indicate that the parties intended to deprive the property of those rights." (emphasis added)); *id.* cmt. e (explaining, after setting out the requisite elements for an easement by necessity, that "servitudes for rights necessary to enjoyment of the property will be implied unless it *affirmatively* appears from the language or circumstances of the conveyance that the parties did intend [to deprive the property of those rights]" (emphasis added)).

{11}    We first evaluate each of the three factors to determine whether the facts found by the district court give rise to the requisite presumption such that an easement by necessity was proper. Concluding that the district court's findings do not establish the second and third elements of an easement by necessity, we next address the district court's reliance on the absence of record evidence that the parties to the 1927 conveyance intended to deprive the Semones Property of legal access.

**A.    Unity of Title**

{12}    The first element of an easement by necessity, unity of title, is met when a common owner severs or conveys a portion of their estate. *See Hurlocker*, 1994-NMCA-082, ¶¶ 6-13. The district court correctly determined that "Plaintiff has

established unity of title" because the court's findings establish that both the Semones Property and the Garcia Property were part of the Manuel Sanchez Patent prior to the conveyance reflected in the 1927 Deed. *See Ciolli*, 2017-NMCA-037, ¶ 18 ("Servitudes by necessity arise on severance of rights held in a unity of ownership; the requirement is fulfilled, as here, when a grantor divides a single parcel into two or more parcels, and it can take place when a grantor conveys less than full ownership in a single parcel." (internal quotation marks and citation omitted)). "The critical time in determining the existence of an easement by necessity is the time when the dominant estate is severed from the servient estate." *Hurlocker*, 1994-NMCA-082, ¶ 14; *see also Herrera*, 1991-NMCA-089, ¶ 13 ("[F]or an easement by necessity to exist the 'necessity' for the creation of the easement and the unity of title must be shown to have concurrently existed."); *id.* ¶ 14 ("[T]he basis for the easement [must] ar[i]se at the time of the initial severance."); *Ciolli*, 2017-NMCA-037, ¶ 19 (same). The 1927 conveyance, resulting in the severance of the Semones Property from the Garcia Property, is thus the pertinent focus in determining whether the remaining elements of an easement by necessity were met.

**B.      Curtailment of Access**

{13}      The second element of an easement by necessity is established when the severed parcel's legal access to a public roadway is curtailed by the severance in

question. *See Ciolli*, 2017-NMCA-037, ¶ 19 (concluding that the curtailment of access element was met when severance "created a landlocked property . . . that had no legal access to a public road"). That is, "[a]n easement by necessity can only arise where an owner of property severs a portion of [their] property and the portion retained or sold is cut off from access to a public route by the land from which it was severed." *Id.* (internal quotation marks and citation omitted). The facts as found by the district court do not establish the requisite curtailment.[3]

{14}    While the district court acknowledged that curtailment of access is a required element, the court never found such curtailment; nor do the district court's findings support a determination that the Semones Property was deprived of access to a public roadway by the 1927 conveyance. In fact, the district court's findings support the opposite determination.

{15}    With respect to "historical access" to the Semones Property, the district court rejected Plaintiff's requested finding that "[t]he [1927] Deed is silent as to access," finding instead that the 1927 Deed "explicitly references a road on the boundary of [the Semones P]roperty." *See Holloway v. N.M. Off. Furniture*, 1983-NMCA-028, ¶ 17, 99 N.M. 525, 660 P.2d 615 (explaining that "it is not error to refuse requested findings which are contrary to findings made, when the findings made are supported

---

[3]To the extent Plaintiff argues it was not her burden to establish that the Semones Property's access to a public road was curtailed by the Garcia Property as a result of the 1927 conveyance, the law, as just described, is otherwise.

by substantial evidence," and that "when a party has the burden of proof on an issue and the party's requested findings on that issue are refused, the effect of the refusal is a finding against the party with the burden of proof"); *see also In re Yalkut*, 2008-NMSC-009, ¶ 18, 143 N.M. 387, 176 P.3d 1119 ("[F]ailure to make a finding of fact is regarded as a finding against the party seeking to establish the affirmative."). The district court further found, as to historical access, that "[p]rior to the creation of Calle del Norte in the 1970s, access to both . . . properties was through Ruby Road." The district court reiterated that "[h]istorically, the public road was Ruby Road, which ran south of the current established road, Calle del Norte," through the Semones Property.[4] The district court additionally found that Plaintiff, herself, had acknowledged that "old historical access to her property" was by way of Ruby Road, and that Ruby Road, prior to Sierra County's vacation of that road, was a county road. The district court rejected Plaintiff's proposed findings that "the accuracy of an existing roadway at the time of the [1927] Deed was both unknown and unknowable," and that "[a]t the time the Semones Property was severed from the Sanchez Homestead, the Semones Property had a reasonable need for access." *See Holloway*, 1983-NMCA-028, ¶ 17; *In re Yalkut*, 2008-NMSC-009, ¶ 18.

---

[4]The district court was able to determine "based on the documents provided" the general location of Ruby Road, finding that if "Ruby Road was still in existence" today, the Garcia Property "would be the dominant estate with a necessity to access the public road" over the Semones Property.

{16} These findings establish that the Semones Property had historical access to Ruby Road, a public roadway, at the time of the 1927 Deed. Given this, the 1927 conveyance did not deprive the Semones Property of access to the public road system and, consequently, the curtailment of access element was not met. In an apparent attempt to avoid this result, Plaintiff points to the purported absence of evidence in the trial record that "the Semones Property had a legal right of access to [a] public highway, other than the right to claim an easement by necessity."[5] This argument, however, ignores the facts actually found by the district court, as outlined above, and

[5]From this purported lack of proof—what Plaintiff calls a "silent record"—Plaintiff contends she is entitled to a "presumption" that an easement by necessity was established without the need to present any evidence. As an initial matter, as just discussed, the record is not "silent"—the district court made myriad findings that the Semones Property was not deprived of access to a public roadway as a result of the 1927 conveyance. Regardless, Plaintiff's argument ignores that on a doubtful or unclear record as to the existence of an easement by necessity, our Supreme Court has concluded no such easement is established. *See Amoco Prod. Co.*, 1981-NMSC-115, ¶ 14 (rejecting the possibility that because the parcel in question "was homesteaded in earlier years, [the Court] might imply that some roadway must have existed at some time prior to conveyance," and instead holding that the proponent "did not establish a 'way of necessity'" because "the evidence is not clear and [the Court is] restricted to the record" on appeal); *see also Los Vigiles Land Grant*, 2014-NMCA-017, ¶ 34 (observing that the decades-long time gap between the conveyance in question and the claim for an easement by necessity "may well have presented difficulties in finding persons who knew about alternative access . . . at the time of severance," but, "[n]evertheless, sufficient testimony existed as to the status of access to permit a reasonable inference that, at the time of severance," alternative access did not exist). And, critically, Plaintiff's argument runs contrary to the burden of proof—which rests with the party claiming an easement, i.e., Plaintiff—to establish the required elements of an easement by necessity by clear and convincing evidence. *See supra* Part I, ¶¶ 8-9.

the evidence supporting such findings. *See Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc.*, 2004-NMCA-063, ¶ 28, 135 N.M. 607, 92 P.3d 53 (explaining that a party's claim that there was "no evidence" to support a finding "appeared to be a misstatement of the evidence" in that it "fail[ed] to explain . . . with reference to all of the evidence, both favorable and unfavorable, . . . why the unfavorable evidence does not amount to substantial evidence"). Such an approach on appeal is ineffective in challenging a trial court's findings and leaves them intact. *See, e.g., In re Est. of Grover*, 2026-NMCA-033, ¶¶ 27, 30, 585 P.3d 1020 (describing the procedure mandated by the Rules of Appellate Procedure to effectively challenge a trial court's findings and explaining that the failure to follow this procedure results in the trial court's findings being binding on appeal (citing Rule 12-318(A)(3), (4) NMRA (setting out the requirements for a brief in chief)), *cert. denied*, 2026-NMCERT-002; *see also* Rule 12-318(B) (requiring that "[a]n answer brief . . . conform to the requirements of the brief in chief"); *Komis*, 2026-NMCA-049, ¶ 16 ("[The appellee] does not challenge any of the district court's findings as being unsupported by substantial evidence, and we are therefore bound by these findings on appeal.").

{17}     In short, in light of the district court's unchallenged factual findings, which are binding on appeal, the element of curtailment of access from severance was not established.

## C.     Reasonable Necessity

{18}     Next, we explain why the district court's findings, as discussed above, preclude the court's determination that there was a "reasonable necessity" for a right of way over the Garcia Property in favor of the Semones Property. We additionally explain why the district court's apparent reliance on current necessity as a basis for establishing the third requisite element of an easement by necessity was erroneous.

### 1.     The District Court's Finding of Historical Access Precludes a Finding of Reasonable Necessity

{19}     In light of the district court's findings establishing that historical access to the Semones Property was not curtailed by the 1927 conveyance, the district court's determination that Plaintiff met the third element of reasonable necessity was erroneous. We explain.

{20}     "In order to uphold an easement by necessity a court must find a conveyance of a portion of the grantor's land that, after the severance of the two parcels, creates a necessity to pass over one of them to reach any road or public street." *Hurlocker*, 1994-NMCA-082, ¶ 5. Such necessity occurs when one parcel becomes landlocked as a result of the severance in question, and there is no reasonable means of accessing a public roadway from the landlocked property other than by right of way over the severed parcel. *See Ciolli*, 2017-NMCA-037, ¶ 20 ("An easement by necessity arises when, 'prior to the conveyance, the property did enjoy such rights [of access] and that, absent the implied servitude, the conveyance would deprive it of such rights.'"

(quoting Restatement (Third) of Prop.: Servitudes § 2.15 cmt. c (alteration in original))); *see also id.* (explaining that "necessity" in this context "connotes an understanding that, while more than mere convenience is involved, there can be no other reasonable way of enjoying the dominant tenement without the easement"); *Los Vigiles Land Grant*, 2014-NMCA-017, ¶ 32 (providing that New Mexico requires, at the time of severance, a "reasonable necessity"—i.e., that "there is a practical inability to have access any other way"—for the landlocked parcel to have a right of way over the severed parcel (internal quotation marks and citation omitted)).

{21} Because, based on the unchallenged findings by the district court, the Semones Property had historical access via Ruby Road, a public roadway, it did not become landlocked by the 1927 conveyance and, as a result, no necessity arose for a right of way over the Garcia Property at that time. *See Ciolli*, 2017-NMCA-037, ¶¶ 19-20 (concluding the elements of curtailment and reasonable necessity were met where the conveyance in question created a landlocked parcel, cutting off access to the public highway, which abutted the servient parcel). Plaintiff, having failed to meet her burden to establish the second or third requisite elements of an easement by necessity, was not entitled to such over the Garcia Property. The district court's contrary conclusion was erroneous. *See Sachs*, 1976-NMSC-076, ¶ 24 ("Since the trial court's conclusion to the contrary was in conflict with and not supported by its

own finding, the decision of the trial court must be reversed."); *Komis*, 2026-NMCA-049, ¶ 16 ("Because the district court's conclusion in this case conflicts with its findings of fact, the findings of fact control and we will apply the proper conclusion of law." (text only) (citation omitted)).

**2.      The District Court's Finding of a Current Necessity, Arising Subsequent to Severance, Does Not Support an Easement by Necessity**

{22}      To the extent the district court found a "reasonable necessity" based on the Semones Property *currently* being landlocked, such that a necessity for a right of way over the Garcia Property to reach a public roadway *now* exists, this finding is insufficient to establish an easement by necessity. Based on the district court's unchallenged findings, the necessity in this case did not arise until at least 1967—forty years after the properties were severed and fifty years before Plaintiff purchased the Semones Property—due to a flood. As we explain, that the Semones Property may have lost access to the public road system, becoming landlocked, at a date subsequent to the 1927 conveyance is not relevant to the question of whether the Garcia Property may be burdened by an easement of necessity in favor of the Semones Property.

{23}      As Plaintiff and the district court appear to recognize, the intent of the parties to the conveyance severing the parcels is paramount in determining the existence of an easement by necessity. *See Hurlocker*, 1994-NMCA-082, ¶ 17 (providing that easements by necessity "rest[] more heavily upon the intent of the parties than a

public policy in favor of productive land use"); *Firstenberg v. Monribot*, 2015-NMCA-062, ¶ 45, 350 P.3d 1205 (explaining that "[t]he easement by necessity rests heavily upon the intent of the grantor" (omission, internal quotation marks, and citation omitted)). This Court previously held that to establish an easement by necessity, "the required necessity must exist *at the time of severance*." *Hurlocker*, 1994-NMCA-082, ¶ 20 (emphasis added). This requirement, our Court explained, "is based on the concept that if the [property] is readily accessible by other means at the time of severance, there can be little basis to infer intent to preserve access." *Id.*; *see also Ciolli*, 2017-NMCA-037, ¶ 27 ("The implied intent of the grantor to create an easement by necessity depends on the existence of the necessity for the easement *at the time* of the original conveyance creating the landlocked property, which *at the time* of severance creates dominant and servient estates." (emphases added)). It is the curtailment of access and the reasonable necessity for a right of way that occur *concurrently* with the severance that gives rise to the presumption that the grantor must have intended to grant an easement of ingress and egress with the conveyance of the property. *See Herrera*, 1991-NMCA-089, ¶ 10 ("Necessity for such easement arises from a presumption that, when a grantor conveys property, absent a clear indication to the contrary, the grantor is presumed to have intended to have reserved unto [themselves], or to have conveyed to [the] grantees, a means of access to the property in question, so that the land may be beneficially utilized."). Any necessity

that arises after the conveyance evinces no intent by the grantor to convey a right of way to the severed property, and as a result, provides no justification for an easement by necessity. *See Hurlocker*, 1994-NMCA-082, ¶ 20; *see also id.* ¶ 19 (observing that "the law allows landlocked parcels to remain in that condition where they do not meet the requirements for imposition of an easement by necessity").

**{24}** We have found no reasoned basis to depart from this well-established rule that a necessity arising subsequent to severance demonstrates no intent on behalf of the grantor and, as a result, is not relevant to the establishment of an easement by necessity. This approach is in line with the Restatement (Third) of Property: Servitudes § 2.15, upon which New Mexico courts rely. *See Firstenberg*, 2015-NMCA-062, ¶ 45 ("In considering the nature of implied easements by necessity, New Mexico courts rely on the Restatement (Third) of Property: Servitudes § 2.15."). The Restatement provides, "Servitudes will be implied only in conveyances that *cause* the necessity to arise." Restatement (Third) of Prop.: Servitudes § 2.15 cmt. c (emphasis added). An illustration in the Restatement is particularly pertinent to the circumstances at issue in this case.

> O, the owner of two contiguous parcels, conveyed Blackacre to A. At the time of the conveyance, Blackacre abutted a public road. O's retained parcel, Whiteacre, abutted a different public road. When the access rights from Blackacre to the public road were later condemned, the owner of Blackacre had no right to cross Whiteacre to reach the public road. Since the conveyance from O to A did not deprive Blackacre of access to a public way, there was no implied servitude for access.

*Id.*, illus. 8. Similarly, here, because the district court's findings do not establish that the 1927 conveyance left the Semones Property without access to a public roadway, the subsequent flood that resulted in the public road system being moved and access to the Semones Property being cut off does not give rise to an implied servitude for access over the Garcia Property.

{25}     Further, this approach—holding irrelevant later arising necessities—is consistent with that taken outside New Mexico. *See, e.g.*, *State v. Innkeepers of New Castle, Inc.*, 392 N.E.2d 459, 464 (Ind. 1979) ("If the way of necessity was not implied at the time of the grant [that severed the properties], it cannot be established by subsequent necessity. In other words, the necessity must be determined from the conditions as they existed at the time of the conveyance." (omission, internal quotation marks, and citation omitted)), *cited approvingly in Hurlocker*, 1994-NMCA-082, ¶ 20; *Frederick v. Consol. Waste Servs., Inc.*, 573 A.2d 387, 388-89 (Me. 1990) (concluding that no easement by necessity existed where, at the time of severance, the plaintiff's tract was bounded by a town road, even though this road was discontinued by the town fifty-five years later, making the plaintiff's tract landlocked); *Ondis v. City of Woonsocket ex rel. Touzin*, 934 A.2d 799, 805-06 (R.I. 2007) (rejecting the plaintiff's argument "for an expansion of the law, so that an easement by necessity may arise later in time, after severance has occurred, when access is actually destroyed" because "the point of severance is the only time an

easement by necessity can arise"); *Am. Small Bus. Inv. Co. v. Frenzel*, 383 S.E.2d 731, 734 (Va. 1989) (explaining that "the implied easement of necessity must arise contemporaneously with the severance of the unity of title" and where "the necessity did not arise until . . . three years after unity of title had been severed," the plaintiff "[wa]s not entitled to an easement by necessity"); *see also, e.g.*, 28A C.J.S. *Easements* § 96 (2026) ("Since an easement implied by necessity arises simultaneously with the severing conveyance and because of the circumstances then existing, it may not arise from circumstances occurring subsequent to the conveyance." (footnote omitted) (collecting cases)).

{26}    In short, because, based on the facts found by the district court, legal access to the Semones Property was not curtailed when unity of title was severed in 1927, no necessity arose at that time and no easement by necessity was established. That a later necessity may have arisen when the public roadway that provided historical access to the Semones Property was eliminated due to flooding and repositioning of the road system in the area does not change this result. To the extent the district court concluded otherwise, it erred.

**D.    Absence of Evidence of Intent to Deprive**

{27}    Having concluded that Plaintiff failed to establish the three requisite elements of an easement by necessity, we examine the district court's apparent reliance on the absence of record evidence that the parties to the 1927 Deed intended to deprive the

Semones Property of legal access to recognize an easement by necessity. The district court found that "[t]here was no evidence presented that the grantor and grantee to the [1927 D]eed intended to deprive the [Semones P]roperty access to the public road system," and that "[n]othing in the language in the [1927] Deed reflects an intention to deprive the [Semones P]roperty of legal access." Because the Semones Property maintained historical access via Ruby Road, however, it makes sense that there was no indication in the 1927 Deed, or elsewhere in the record, that the parties to the 1927 conveyance intended to deprive the Semones Property of legal access. Consequently, the absence of such evidence *alone* does not give rise to an easement by necessity. As discussed, the proponent of an easement by necessity must establish the three elements—unity of title, curtailment of access from severance, and reasonable necessity at the time of severance—for a presumption to arise that the grantor intended to convey an easement by necessity. *See supra* Part I, ¶ 9. When the three-part test is met, language in the deed in question or other evidence in the record that indicates an intent to deprive the dominant property of access can potentially be used to *defeat* such presumption; the lack of such evidence, as found by the district court, in the absence of the three requisite elements being established, however, is insufficient to give rise to an easement by necessity. *See supra* Part I, ¶¶ 9-10. Thus, to the extent the lack of evidence of an intent to deprive the Semones

Property of legal access was the basis for the district court's recognition of an easement by necessity, the court erred.

## II. Plaintiff's Arguments in Support of Affirmance Are Not Persuasive

**{28}** We turn now to Plaintiff's varied contentions in support of affirmance, to the extent they have not already been addressed in our discussion above. *See, e.g.*, *Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 ("[An appellate c]ourt may affirm a district court ruling on a ground not relied upon by the district court, but will not do so if reliance on the new ground would be unfair to appellant." (alteration, internal quotation marks, and citation omitted)). We have thoroughly considered Plaintiff's answer brief, and concluding Plaintiff's contentions are without merit, we address them only briefly.

**{29}** To the extent Plaintiff argues that there was no New Mexico law on easements by necessity at the time of conveyance in 1927 and that this somehow favors her claim, Plaintiff's premise is without merit. The Territorial Legislature adopted the English common law in the late nineteenth century, prior to the conveyance in question. NMSA 1978, § 38-1-3 (1875-76). And, as Plaintiff appears to recognize, the doctrine of easements by necessity can be traced back in the common law for centuries. *See Hurlocker*, 1994-NMCA-082, ¶ 16 (explaining the historical basis for easements by necessity); James W. Simonton, *Ways by Necessity*, 25 Colum. L. Rev. 571, 572 (1925) (tracing the underpinnings of the doctrine of easements by necessity

to the fourteenth century), *cited approvingly in Hurlocker*, 1994-NMCA-082, ¶ 16; *see also* Restatement (Third) of Prop.: Servitudes § 2.15 cmt. a ("The rule that conveyances include those rights necessary to make use of the property conveyed can be traced back in the common law at least as far as the 13th century.").

{30}     Next, Plaintiff asserts that at the time of the 1927 conveyance "it was[ not] clear how to establish a public road." This assertion is apparently advanced to draw into doubt the district court's findings that the Semones Property had historical access via Ruby Road, a county road. As discussed, Plaintiff did not challenge these findings and, consequently, they stand. *See supra* Part I.B., ¶ 16. Moreover, contrary to Plaintiff's assertion, we observe that there were organized laws for establishing public roads in New Mexico dating back to the territorial days. *See, e.g., State Highway Comm'n v. Sargent*, 1915-NMSC-065, ¶ 8, 20 N.M. 577, 151 P. 232 (describing the legislation pertaining to public roadways from 1905 to 1912); NMSA 1978, § 67-2-1 (1905) (defining public highways to include county roads). Plaintiff's speculative assertions regarding the purported inability to create public roadways in 1927 requires no further consideration. *See State v. Henz*, 2022-NMCA-031, ¶ 16 n.1, 514 P.3d 1 (declining to consider a speculative, undeveloped argument).

{31}     Finally, Plaintiff cites the Homestead Act and law pertaining to permissive and prescriptive easements, as well the rights of property owners abutting public roads. To the extent Plaintiff cites these authorities to suggest that any access the

Semones Property enjoyed in 1927 was permissive and therefore insufficient to defeat an easement by necessity, *see, e.g.*, *Herrera*, 1991-NMCA-089, ¶ 14 ("Revocable permission to use another's property does not negate an easement by necessity."), such assertion again is contrary to the district court's unchallenged factual findings and is therefore ineffective. *See supra* Part I.B., ¶ 16. To the extent Plaintiff cites these authorities for some other purpose, Plaintiff fails to explain how they pertain to the matter at hand—i.e., whether the facts found by the district court support a determination, under New Mexico law, that an easement by necessity was established at the time the Semones Property was severed from the Garcia Property. We therefore give Plaintiff's arguments no further consideration. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 71, 309 P.3d 53 (declining to review an argument where the briefing "provide[d] no explanation of how or why we should apply [the cited] precedents to the facts of th[e] case").

**CONCLUSION**

{32}     We reverse the district court's judgment recognizing an easement by necessity in favor of Plaintiff and remand for entry of a judgment consistent with this opinion.

{33}     **IT IS SO ORDERED.**

_____
**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

_____
**JANE B. YOHALEM, Judge**

_____
**GERALD E. BACA, Judge**